## STATE v. RUSSELL ALLEN HAGUE.

225 N. W. 2d 852.

February 7, 1975—No. 44626.

*C. Paul Jones*, State Public Defender, and *Robert E. Oliphant*, Special Assistant State Public Defender, for appellant.

*Warren Spannaus*, Attorney General, *Peter W. Sipkins*, Solicitor General, *Richard B. Allyn* and *Michael J. Bradley*, Special Assistant Attorneys General, and *Arvid L. Wendland*, County Attorney, for respondent.

PER CURIAM.

Defendant, who was found guilty by a district court jury on a charge of manufacturing or possessing with intent to manufacture marijuana, Minn. St. 152.09, subd. 1(1),[1] contends upon this appeal from judgment of conviction and from the order denying his motion for a new trial that the evidence was insufficient to support the conviction and that the trial court erred in its instructions. After careful consideration, we affirm.

On July 26, 1972, the Faribault County sheriff's office, in response to information received from an informant, sent a deputy to a site alongside a dirt road approximately 2½ miles from Blue

---

[1] Defendant also was convicted of simple possession of marijuana, Minn. St. 152.09, subd. 1(2), but does not challenge that conviction on appeal.

Earth. At the site the deputy found a large amount of marijuana spread on sheets which were not visible from the road. He also found in a nearby clump of grass three green plastic bags rolled into a ball. Because the marijuana was very wet, the deputy left, thinking it unlikely that anyone would claim it until it was drier.

Over the next 3 days, the deputy and a Blue Earth police officer made a number of trips by car and plane to see if the marijuana was still there and what was its condition. Finally on the afternoon of July 29, after determining that the marijuana was beginning to dry, the officers began a stakeout. This stakeout resulted in the arrest later that afternoon of defendant and two others when they came and started to place the marijuana in the green plastic bags.

The combined weight of the marijuana possessed by the three was 14 pounds, 10 ounces. The marijuana had been processed to the extent that it had been picked, the leaves separated from the main stem of the plants, and dried. At this point all one would have to do to smoke the marijuana would be to shred it.

In arguing that this evidence was insufficient to support the conviction, defendant admits that "the growing and cultivating, picking and separating from the stems, or grinding and packaging of the plant substance can all be seen to resemble processes that may meet the test of being manufacturing," but contends that in this case there was insufficient evidence connecting defendant to such activities. It is true that there was no direct evidence that defendant grew the marijuana or picked it or readied it for drying or dried it, but we believe that the jury properly could infer from the evidence that defendant was connected to one or more of these activities and, therefore, we conclude that there was sufficient evidence to convict.

In contending that the trial court erred in its instructions, defendant points to the fact that the trial court read to the jury the statutory definition of "manufacturing" contained in Minn. St. 152.01, subd. 7, which reads as follows:

" 'Manufacturing', in places other than a pharmacy, means and includes the production, quality control, and standardization by mechanical, physical, chemical, or pharmaceutical means, packing, repacking, tableting, encapsulating, labeling, relabeling, filling, or by other process, of drugs."

Specifically, defendant argues that the statutory definition of "manufacturing" has no application to marijuana. We need not decide this issue because, for one thing, defendant did not object to the instruction and, also, because the trial court did not simply read the statute but added that in the case of marijuana, manufacturing involved picking it, drying it, grinding it, and doing any other acts generally deemed necessary to prepare it for smoking.

Affirmed.

OTIS, JUSTICE (dissenting).

In my opinion, there is no evidence, let alone evidence of guilt beyond a reasonable doubt, to support a finding defendant had any part in "manufacturing" a controlled substance. When apprehended, he was simply packaging what had already been processed. The evidence makes it equally plausible to speculate that the informant was the one who manufactured the marijuana and thereafter sold it to the defendant, or that some third person, having discovered it, led defendant to the spot where it was drying out. To hold that a jury could find that because of the remote location no one but the manufacturer could have been aware of where the marijuana was located is, in my opinion, a conclusion wholly unsupported by the evidence. I would hold defendant was guilty only of illegal possession.